[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13080
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-14422-DMM


JILL ALEXANDER,
as Personal Representative of the Estate of Mitchell Brad Martinez, deceased,

                                        Plaintiff - Appellant,

versus

SHERIFF OF INDIAN RIVER COUNTY, FLORIDA,
Deryl Loar,
CHRISTOPHER SHARKEY,
in his official capacity as a deputy of the Indian River County Sheriff's Office,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 6, 2018)

Before WILSON, JORDAN and DUBINA, Circuit Judges.

PER CURIAM:

Appellant, Jill Alexander ("Alexander"), as personal representative of Mitchell Brad Martinez's estate ("Martinez" or "decedent"), appeals the district court's order granting summary judgment to Appellees, Indian River County Sheriff Deryl Loar ("Sheriff Loar"), and Indian River County Deputy Christopher Sharkey ("Deputy Sharkey"), on Alexander's civil rights, negligence and wrongful death actions. Alexander's original complaint alleged seven counts: (1) intentional battery against Deputy Sharkey; (2) negligence against Deputy Sharkey; (3) negligence against Sheriff Loar; (4) a Section 1983 claim against Deputy Sharkey for excessive force; (5) a Section 1983 action against Sheriff Loar; (6) a wrongful death action against Deputy Sharkey; and (7) a wrongful death action against Sheriff Loar. After Alexander voluntarily dismissed two counts and the district court dismissed the wrongful death claim against Sheriff Loar, the district court's order disposed of the negligence counts against both appellees, the Section 1983 count against Sheriff Loar, and the wrongful death count against Deputy Sharkey. After reading the parties' briefs and reviewing the record, we affirm.

## I. BACKGROUND

2

Martinez appeared for a bond hearing at the Indian River Courthouse, where the court revoked his bond and remanded him into the custody of the Indian River County Sheriff's Office for transport to the Indian River County Jail ("Jail").  An officer took Martinez to the intake area, where the officer handcuffed Martinez in the front of his body with a handcuff belt, shackled his legs, and placed him in a holding cell to await transport to the Jail.  Deputy Sharkey arrived at the sally port in a van to transport Martinez and seven other inmates to the Jail.  There was a video camera recording activities in the sally port area.  The recording shows Deputy Sharkey loading seven shackled individuals in prison uniform into the back of the van.  The recording shows Martinez walking out of the holding area to the side door of the van, which opens into the forward compartment of the van.  As Deputy Sharkey opens the door to the forward compartment, the recording freezes.  After a 14 second delay, another video camera from the holding area shows Deputy Sharkey walking back inside the holding area.  The sally port video resumes and shows Deputy Sharkey exiting the holding area with a female inmate and escorting her to another transport vehicle.  Neither video records anyone else entering or exiting the sally port area via the holding area before the van left the courthouse.

Although the front compartment of the van contains several lap belts, Deputy Sharkey did not restrain Martinez. Per usual practice, the transport deputies do not buckle the prisoners but give them the option of buckling themselves. Deputy Sharkey could not recall if he mentioned this option to Martinez. The drive from the courthouse to the Jail took approximately eight minutes and occurred without any stops or detours. During the drive, Deputy Sharkey did not hear Martinez make any noises of distress and did not hear any inmates in the back compartment making noise to get his attention. Deputy Sharkey could not see Martinez through the window into the front compartment because several years prior, for security reasons, someone in the Sheriff's Office had taped a black plastic bag over the window to prevent inmates from seeing where they were going. Deputy Sharkey thought this was a departmental decision.

Four of the seven inmates in the back compartment averred that they heard Martinez coughing and hacking during the ride and that it sounded like Martinez was struggling to breathe. The other three inmates stated that they did not hear any noises from the front compartment. No inmate made an attempt to get Deputy Sharkey's attention or to alert him to a potential problem. Upon arriving at the Jail, Deputy Sharkey first escorted the seven inmates inside. When he opened the door to the front compartment, he saw Martinez halfway seated on the floor area,

4

slumped over and making gurgling noises.  After attempting to rouse Martinez, Deputy Sharkey called for assistance.  With the help of another deputy, Deputy Sharkey performed CPR on Martinez until medical staff arrived.  At that time, there were no cuts, abrasions, scratches or bleeding on Martinez.

After transport to the Indian River County Medical Center Emergency Room, a nurse conducted a physical examination of Martinez and did not note any marks around his neck.  The next morning, a nurse noticed two reddish lines around Martinez's neck, bruising on his neck, but no bleeding.  Several days later, Martinez died.  The chief medical examiner conducted an autopsy and opined that the cause of death was cardiac dysrhythmia due to adverse drug reaction.  Two months later, Martinez's mother hired Dr. William Anderson, M.D., to conduct an autopsy.  He opined that the cause of death was hypoxic encephalopathy, diffuse, post-respiratory arrest secondary to blunt force trauma, neck.  Dr. Anderson observed abrasions extending circumferentially, involving most of the neck, and a fractured larynx with associated hemorrhage.  He opined that his injuries most likely resulted from moving around or being thrown around the van because he was not restrained.  Martinez's mother also hired a biomechanical engineer who agreed with Dr. Anderson's opinions.

## II. DISCUSSION

5

Alexander contends that the district court erred in granting summary judgment to the Appellees because (1) it failed to consider Alexander's vicarious liability allegations in the complaint; (2) it found that the facts implicate operational functions, not discretionary ones; (3) it found that Deputy Sharkey's actions were not in willful and wanton disregard of Martinez's safety and well-being; and (4) it held that no constitutional violation existed to support a Section 1983 claim.  Based upon a de novo review, we conclude none of Alexander's arguments have merit.  *See Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward Cnty.*, 279 F.3d 1316, 1319 (11th Cir. 2002) ("We review the trial court's grant of summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party.").

First, we conclude that the district court did not err by failing to consider a vicarious liability allegation because Alexander did not plead such a claim.  At summary judgment, the only remaining state law claim against Sheriff Loar in his official capacity was a state law negligence count premised on a theory of negligent training and supervision.  There was no alleged cause of action for negligence based upon vicarious liability.  Similarly, the district court properly refused to revive Alexander's wrongful death count against Sheriff Loar when it found that Deputy Sharkey did not act with bad faith, malicious purpose or with

6

wanton or willful disregard.  The district court dismissed this claim at the motion

to dismiss stage, and the claim was not pled in the alternative to the wrongful death

claim against Deputy Sharkey.  Hence, the district court properly did not revive the

wrongful death count against Sheriff Loar.  *See Miccosukee Tribe of Indians of*

*Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (stating that a district

court is barred from amending a plaintiff's claim on summary judgment).

Second, although Alexander challenges the district court's judgment with

regard to her claims against Sheriff Loar on her theory of negligent training and

negligent supervision of Deputy Sharkey as it related to the Sheriff's Office's

policy of transporting inmates within its custody, she does not mention in her

appellate brief any argument on the negligent supervision claim.  As such, she has

waived any challenge to that ruling.  *See United States v. Ardley*, 242 F.3d 989,

990 (11th Cir. 2001) (reaffirming circuit rule that the court does not consider issues

not timely raised in the briefs).  Hence, we affirm the district court's disposition of

that claim.

As to the negligent training claim against Sheriff Loar, the district court

properly found that based on the undisputed facts, there was no evidence that the

Sheriff's Office negligently implemented its training on the transport of those in its

custody.  Alexander asserts on appeal that the Sheriff's decision with regard to the

7

transportation of inmates is an operational function, not a discretionary one, and therefore, Sheriff Loar is not entitled to sovereign immunity under Florida law. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (waiver of sovereign immunity only applies to operational acts). However, Alexander challenges the reasonableness of basic policy decisions made by Sheriff Loar regarding what to include in the training of the deputies as it related to the safe and humane transport of persons in its custody. This is "clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001). Accordingly, we conclude that the district court's grant of summary judgment in favor of Sheriff Loar on the negligent training claim was proper.

Third, we conclude that the district court properly granted summary judgment to Deputy Sharkey based on statutory immunity pursuant to Florida Statute § 768.28(9). Deputy Sharkey is immune from suit unless he acted in bad faith, or with malicious purpose, or with willful and wanton disregard of human rights, safety or property. *See O'Boyle v. Thrasher*, 638 F. App'x 873, 879 (11th Cir. 2016) (noting that Florida courts have held that the language in the statute "connotes conduct much more reprehensible and unacceptable than mere intentional conduct" (citation omitted)). On appeal, Alexander contends that

8

Deputy Sharkey's failure to hear Martinez through the black opaque obstruction was a wanton and willful disregard of Martinez's safety. This argument is meritless. Any obstruction to sight for Deputy Sharkey had no bearing on his ability to hear any commotion. Furthermore, Alexander proffers no evidence to show that Deputy Sharkey performed any action that rose to the level of wanton or willful disregard as to Martinez's safety, nor that any causal nexus exists between any action of Deputy Sharkey and Martinez's injury, as the injury and subsequent death were not reasonably foreseeable under the circumstances. Accordingly, we conclude that the district court properly granted summary judgment to Deputy Sharkey on this claim.

Fourth, we conclude that the district court properly granted summary judgment in favor of Sheriff Loar on the Section 1983 claim. The only constitutional claim Alexander alleged was a claim for excessive force against Deputy Sharkey. Eventually, Alexander abandoned that claim, which meant that she had no underlying constitutional violation to form the basis for the Section 1983 claim against Sheriff Loar in his official capacity. Alexander asserted a new theory at the summary judgment stage, which is improper. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (stating that at summary judgment stage, the proper procedure for a plaintiff to assert a new claim is to

9

amend the complaint).  Although the district court acknowledged that the complaint does not allege a Section 1983 claim against Sheriff Loar based on the Eighth Amendment, it analyzed the claim on the merits and properly denied it. The record is devoid of any evidence that Deputy Sharkey acted with deliberate indifference in transporting Martinez to the Jail.  The district court properly found that this claim fails as a matter of law.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Deputy Sharkey and Sheriff Loar.

AFFIRMED.