[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14966
Non-Argument Calendar

————————————————

D.C. Docket No. 5:16-cv-00024-JSM-PRL

SHEILA ANNETTE CUNNINGHAM,

Plaintiff - Appellant,

versus

FLORIDA CREDIT UNION,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(February 20, 2019)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Sheila Cunningham, an African-American female proceeding *pro se*, appeals the District Court's grant of summary judgment in favor of Florida Credit Union ("FCU") in her employment action. Cunningham brought discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) ("Title VII").[1]

We affirm the District Court's grant of summary judgment in favor of Florida Credit Union ("FCU") because Cunningham has not shown a question of material fact that renders her case appropriate for trial. Because we write for the parties, we set out facts only as they are needed to support our analysis.

## I.

We review *de novo* a district court's grant of summary judgment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010). Summary judgment is appropriate when the record indicates "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

Because FCU has provided explanations for why Cunningham's termination was lawful, and because Cunningham has not argued before us—let alone before

---

[1] Cunningham also raised a claim under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01, 760.11, and 509.092, and the District Court granted summary judgment to FCU on that claim as well. On appeal, Cunningham concedes that her FCRA claim is barred.

2

the District Court—that those explanations are pretextual, both her discrimination and retaliation claims fail as a matter of law.  We take each claim in turn.

### A.

Using circumstantial evidence, a plaintiff may establish a Title VII discrimination claim in one of two ways.  She may invoke the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993).  Or she may present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).

Because Cunningham fails to meaningfully argue on appeal that she presented a "convincing mosaic," we do not analyze the case under that framework.  *See United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001) (noting "our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned").

Under *McDonnell Douglas*, a plaintiff makes out a prima facie case by establishing that she "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by

3

someone outside the protected class or was treated less favorably than similarly situated individuals outside the protected class." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.7 (11th Cir. 2018).  If the plaintiff establishes these elements, the burden of production shifts to the defendant to present evidence of a "legitimate, non-discriminatory reason for the challenged action." *Id.* at 1312.  If the defendant does so, the burden shifts back to the plaintiff to introduce evidence that the proffered reason was a "mere pretext for discrimination." *Id.*

FCU presented evidence that Cunningham was terminated for deficient work performance.  Because Cunningham has not argued that the proffered evidence is pretextual, we do not analyze whether she has established a prima facie case.

In March 2012—two years before Cunningham was terminated—FCU began giving her notice of two specific areas for improvement, both of which related to time management.  She was assigned to handle various FCU accounts but began working on those accounts too close to deadlines and failed to timely submit completed loan packets to another department.  The first issue placed FCU at risk of regulatory violations due to "charge offs" that occur at the 60-day mark.

The problems continued.  In 2013, over a roughly two-month period, Cunningham misplaced between 26 and 42 loan packets per week, whereas others in her position misplaced only between one and six packets.  Later in 2013, an audit revealed that Cunningham had begun working on only 38% of her accounts,

4

whereas the one other person in her position at the time had begun working on 72% of that person's accounts. In January 2014, just months after a October 2013 meeting and after Cunningham's supervisor had worked to help her with time-management skills, Cunningham was placed on probation because one of her accounts had passed the 60-day deadline; she had not begun working on it until the 58th day. Cunningham was terminated shortly after completing her probationary period because Cunningham's supervisor's supervisor had discovered errors in Cunningham's work that he believed would have caused the loans to be unenforceable. The errors included erroneous indications that clients had made certain elections. The supervisor's supervisor's supervisor ultimately directed Cunningham's termination.

Despite FCU's proffer of this evidence that Cunningham was terminated for deficient work performance, Cunningham failed to provide any evidence that FCU's decision to terminate her was pretext for discrimination. Indeed, she does not even argue on appeal that the motivation was pretextual. As such, she has failed to meet her burden of production under *McDonnell Douglas*.

## B.

Cunningham's retaliation claim suffers from the same flaw. A prima facie case requires a showing that "(1) the employee was engaged in statutorily protected activity; (2) the employee suffered an adverse employment action; and

5

(3) a causal link exists between the protected activity and the adverse employment action." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). As with a discrimination claim, "[o]nce a *prima facie* case has been established, the employer may come forward with legitimate reasons for the employment action to negate the inference of retaliation." *Id.* (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (alteration omitted)). And yes, if the employer does so, the burden of production then reverts to the employee to introduce evidence that the asserted reason is "pretextual." *Id.* at 1310−11.

Cunningham argues that she was terminated because she notified FCU that one of her colleagues had wrongfully claimed an incentive payment to which Cunningham was supposedly entitled. We need not reach whether Cunningham has established a prima facie case because as described above, FCU has produced evidence that she was terminated due to performance deficiencies, yet Cunningham has not responded with evidence that FCU's asserted reason is pretext for retaliation.

III.

For these reasons, the District Court's grant of FCU's Motion for Summary Judgment is **AFFIRMED.**

**SO ORDERED.**

6